**Charles Waymon BROWN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–88–00094–CR.**

Court of Appeals of Texas,
Tyler.

Oct. 31, 1988.

Richard L. Ray, Canton, for appellant.
Tommy Wallace, Criminal Dist. Atty., Canton, for appellee.

PER CURIAM.

This is an appeal from an order revoking probation. On November 28, 1983, Charles Waymon Brown pleaded guilty to the offense of delivery of a controlled substance, to-wit: amphetamines, and was assessed a punishment of five years' confinement. Imposition of sentence was suspended and Brown was placed on probation for a period of ten years. The conditions of probation included the provisions that Brown "commit no offense against the laws of this State or any other State of the United States," and that Brown "submit to such medical examinations and medical tests, to include urinalysis and/or Nailine tests to determine the use of drugs; such examinations or tests to be conducted monthly ... without advance notice to the probationer."

On February 1, 1988, the State filed its amended petition for revocation of Brown's probation alleging that he violated the conditions of probation in that "on or about the 14th day of January, 1988, [Brown] did then and there intentionally and knowingly possess a usable quantity of marijuana of less than two (2) ounces." After a hearing, the trial court revoked Brown's probation and assessed his punishment at five years' confinement.

By his only point of error, Brown asserts that the trial court abused its discretion in revoking his probation based upon the allegation that he possessed a usable quantity of marijuana. He argues that no evidence was produced to establish that he possessed a usable quantity of marijuana because the only evidence admitted was that his urine tested positive for marijuana.

At the probation revocation hearing, Charles Landrum, an adult probation officer for Van Zandt County, testified that on January 14, 1988, he personally observed Brown give a urine sample. The sample bottle was then sealed and labeled with Brown's name and cause number and transferred to Charlene Silva, another adult probation officer. Charlene Silva testified that she locked the sample in a file cabinet until it was delivered to Diagnostic Reference Laboratory in Tyler. Evia Marie Carlson, a medical technologist who is a supervisor at Diagnostic Reference Laboratory, testified that a urine sample labeled with the name of Charles W. Brown and cause number 13, 208 was received on January 14, 1988, at Diagnostic Reference Laboratory. The urine sample was tested on January 16, 1988, and found to contain cannabinoids. Carlson further testified that after the initial test, the specimen was retested by an alternate procedure. This test also produced positive results for marijuana. Carlson testified that the quantitative measurement of cannabinoids that must be present in the urine sample in order to obtain a positive result is 100 nanograms per milliliter. Carlson testified

that passive inhalation of marijuana smoke would not produce a result of 100 nanograms per milliliter. The testimony of Carlson was admitted by the trial court without objection by Brown.

Brown testified that on January 10th and 11th of 1988, he rode to work in a pickup truck with two men who were smoking marijuana. Brown testified that he fell asleep, and when he awoke the other two men were smoking marijuana. He testified that he asked the men to put out the marijuana because he was on probation. Brown further testified that he did not smoke any marijuana at that time.

The question in this case is whether evidence that a probationer's urine tested positive for marijuana is sufficient to constitute possession of a usable quantity of marijuana pursuant to Tex.Rev.Civ.Stat. Ann. art. 4476–15, § 4.051(a) (Vernon Supp. 1988)[1] so as to revoke probation.

In a probation revocation case the State must prove the allegations in the petition by a preponderance of the evidence. *Garrett v. State*, 619 S.W.2d 172 (Tex.Cr.App.1981). On appeal, the question in a probation revocation case is whether the trial court abused its discretion. *Lloyd v. State*, 574 S.W.2d 159 (Tex. Cr.App.1978).

In order to establish the unlawful possession of marijuana, the State must prove that the accused exercised care, control, and management over the substance and knew the substance was a controlled substance. *Pierce v. State*, 577 S.W.2d 253 (Tex.Cr.App.1979). In a possession of a controlled substance case, the evidence must affirmatively link the accused to the controlled substance in such a manner that a reasonable inference arises that the accused knew of its existence. *Brooks v. State*, 529 S.W.2d 535 (Tex.Cr.App.1975). The existence of the level of marijuana in Brown's urine establishes by a preponderance of the evidence that he exercised care, control, and management over the sub-

---

1. Section 4.051(a) provides:
   Except as authorized by this act a person commits an offense if he knowingly or intentionally possesses a usable quantity of marijuana.

stance in a usable quantity. Brown's testimony also indicates that he knew marijuana was a controlled substance. The presence of marijuana in Brown's urine at a level in excess of that found by passive inhalation also certainly "affirmatively links" Brown to the controlled substance in such a way that a reasonable inference arises that Brown knew of its existence.

In this case, the evidence is circumstantial. The test in a circumstantial evidence case is that the circumstantial evidence must be such as to exclude every reasonable hypothesis other than the accused's guilt. *Stogsdill v. State*, 552 S.W.2d 481, 486 (Tex.Cr.App.1977). Viewed in the light most favorable to the verdict, the evidence in this case shows by a preponderance of the evidence that the concentration of marijuana found in Brown's urine was in excess of the amount that would exist from mere passive inhalation. The level of marijuana found in Brown's urine can only be explained by Brown having first possessed and smoked a usable quantity of marijuana. Brown's explanation that he passively inhaled marijuana smoke six days before his urine tested positive for marijuana is unpersuasive to explain the existence of the level of marijuana found in Brown's urine. The fact that Brown had the prohibited drug within his system is circumstantial evidence that he was in possession of a usable quantity of the drug prior to taking it. It should be patently obvious that Brown must have first possessed a usable quantity of marijuana before it was detected in his urine. We find that the incriminating circumstances of a concentration of marijuana in Brown's urine greater than would exist from passive inhalation, exclude every reasonable hypothesis other than his guilt.

We conclude that the trial court did not abuse its discretion in revoking Brown's probation because the State established by a preponderance of the evidence that Brown violated the laws of this State by possessing a usable quantity of marijuana since Brown's urine tested positive for marijuana at a level greater than is found for passive inhalation.

The judgment of the trial court is affirmed.