**UNITED STATES of America**

**v.**

**Theophilus BLACKSTON, Appellant.**

**No. 90–3750.**

United States Court of Appeals,
Third Circuit.

Argued March 8, 1991.

Decided July 29, 1991.

Raymond M. Radulski (argued), Wilmington, Del., for appellant.

William C. Carpenter, Jr., U.S. Atty., Thomas V. McDonough (argued), Asst. U.S. Atty., Wilmington, Del., for appellee.

Before BECKER, NYGAARD, Circuit Judges, and GREEN, District Judge.*

## OPINION OF THE COURT

BECKER, Circuit Judge.

This is an appeal by defendant Theophilus Blackston from an order of the district court for the District of Delaware revoking a term of supervised release and imposing a sentence of three years imprisonment. The revocation was predicated on evidence that Blackston, shortly after his release from prison, furnished three urine specimens to his probation officer that tested positive for cocaine, and subsequently admitted to using cocaine on three occasions since his release. Concluding that Blackston had violated a condition of his supervised release, the district court next determined the appropriate sentence under 18 U.S.C. § 3583(g) and the United States Sentencing Commission's Chapter 7 policy statements for violations of supervised release (the "Chapter 7 policy statements"). The court "rejected" the four-to ten-month sentencing range prescribed by the Chapter 7 policy statements on the ground that Blackston had "possessed" cocaine, and that the two-year mandatory minimum set forth in section 3583(g) therefore applied. Finding Blackston's violation particularly egregious, the court imposed the maximum sentence permitted under section 3583(e)(3), three years.

The principal issue raised on appeal is whether, as Blackston asserts, the district court erred in holding that the evidence of his "use" of cocaine was sufficient to establish circumstantially "possession" for purposes of section 3583(g). For analytic clarity, we will split this issue into its legal and factual components. The legal question—whether section 3583(g) forecloses resort to evidence of drug use to prove circumstantially prior possession—is exceedingly close. We nonetheless conclude that in light of (1) the lack of a prohibition against considering such evidence in section 3583(g) or its legislative history; (2) the clear relevance of such evidence to a finding of possession; (3) the precedential weight of the prevailing federal and state jurisprudence; and (4) the language of Application Note 5 to Guidelines § 7B1.4, the district court may base a finding of "possession" on evidence of "use." We empha-

* The Honorable Clifford S. Green, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

size, however, that this decision should not be read as *requiring* revocation of supervised release every time a defendant tests positive for drug use. Instead, the supervised release system, as per Congress's intent, remains flexible. The probation officer still enjoys discretion in deciding whether to commence revocation proceedings, and the district court retains latitude in making the factual finding under section 3583(g) that the defendant "possessed a controlled substance."

By contrast, the factual question at bar—whether three positive urinalyses plus admitted drug use is sufficient to establish "possession" by a preponderance of the evidence—is relatively straightforward. After reviewing the record, we are satisfied that the district court did not commit clear error in finding that it is "more likely than not" that the defendant "possessed" cocaine prior to ingesting it. We further note that, because the defendant admits to using drugs voluntarily, there is no allegation that the cocaine was administered against his will or by trick. For the foregoing reasons, and because the court's sentence was not "plainly unreasonable," 18 U.S.C. § 3742(e)(4), the order of the district court revoking supervised release and imposing a three-year prison sentence will be affirmed.

## I.

On September 29, 1989, Blackston pleaded guilty to four counts of a ten-count indictment charging him with distribution of cocaine within 1000 feet of a public elementary school, in violation of 21 U.S.C. § 845a. He thereafter was sentenced to a sixteen-month term of imprisonment to be followed by a six-year term of supervised release. The district court imposed the fourteen standard conditions on the term of supervised release, including the requirement ("Condition # 8") that Blackston "shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance."

Blackston was released from prison on September 7, 1990, and commenced his supervised release term. His performance, however, proved less than exemplary. According to the averments of his probation officer in the petition to revoke supervised release: (1) three consecutive urine specimens, submitted by Blackston on September 20th, September 27th, and October 4th respectively, tested positive for cocaine metabolites; (2) Blackston admitted on October 4th to using cocaine on three occasions since his release from prison; and (3) Blackston failed to submit a urine specimen for testing during the week of October 8th. Based on these allegations, the probation officer asked the district court to issue a warrant for Blackston to determine whether he had violated Condition # 8 of his supervised release. The district court issued the requested warrant.

On November 1, 1990, the district court held a hearing on this charged violation. Because Blackston admitted to the probation officer's allegations (i.e., his submission of three positive urine samples and his confession to use of cocaine on three occasions), the only disputed issues at the hearing were whether his supervised release should be revoked, and, in the event that it was, what the appropriate sentence should be. Blackston contended that, if the court revoked his supervised release, the appropriate sentence should be four to ten months, as prescribed by section 7B1.4(a) of the Chapter 7 policy statements, which in fact became effective on the sentencing date.[1] The government, however, argued that by statute, 18 U.S.C. § 3583(g), the district court was required to impose at least a two-year term of imprisonment,[2]

---

1. Guidelines § 7B1.4(a) contains a table prescribing the ranges of imprisonment that apply upon revocation of supervised release. This table recommends a sentence of four to ten months imprisonment for a defendant (such as Blackston) who, at the time he originally was sentenced, had a Criminal History Category of II and who committed a Grade C violation of supervised release.

2. Section 3583(g) provides that, if the defendant is found to be in the "possession of a controlled substance," the district court is required to terminate supervised release and sentence the defendant to a period of incarceration of at least one-third of the term of supervised release. Here, Blackston's term of supervised release

and that this mandatory minimum prevailed over the sentence recommended by the Chapter 7 policy statements.[3] Noting that Blackston had proven himself unamenable to treatment,[4] the government recommended that the court impose the three-year statutory maximum for violation of supervised release, 18 U.S.C. § 3583(e)(3).[5]

At the conclusion of the revocation hearing, the district court found that Blackston had violated Condition #8 of his supervised release. The court "rejected" the four- to ten-month sentencing range prescribed by the Chapter 7 policy statements, concluding that the mandatory minimum of section 3583(g) applied because Blackston had "possessed" cocaine:

> the presence of cocaine in [Blackston's] urine as evidenced by the urinalysis constitutes *possession* as effectively as proven otherwise. Certainly it is circumstantial evidence and certainly for purposes of this hearing I find it has been established by a preponderance of the evidence.

(Emphasis added). This finding, the district court stated, required it to sentence Blackston to a minimum term of two years imprisonment—irrespective of the sentencing range recommended by the Chapter 7 policy statements. The court noted additionally that it had the power to sentence Blackston to a maximum term of three years imprisonment under section 3583(e)(3).

Based on the foregoing, the district court "revoked in its entirety" Blackston's original sentence and substituted in its stead a term of three years imprisonment. In opting for a sentence at the very top of the permissible statutory range, the district court commented:

> I put you on supervised release thinking that you would do better, you didn't. You ignored that trust. For that violation of trust you are going to go back to jail. And secondly, I want the message to go out to your friends in Middletown, your family and friends in Middletown that this kind of activity is going to be dealt with swiftly and surely and directly, and for those people who become involved in drugs, they risk going to jail for a long period of time.
>
> Even if you get supervised release there's a long rope that will reach out for a long period of time so you can be dragged in here to account for your activities.

The district court also stated that Blackston remained obligated to pay the $250 special assessment and the $160 restitution that had been imposed as part of his original sentence.[6] This appeal followed, over which we have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

Blackston raises essentially three challenges on appeal. He begins by contending that the district court erred in revoking "in its entirety" his prior sentence, as opposed to revoking his term of supervised release. Next he asserts that the district court erred in holding that evidence of his "use" of cocaine was sufficient circumstantial evi-

---

was six years; therefore, if section 3583(g) applied, the mandatory minimum was two years.

3. Guidelines § 7B1.4(b)(2) provides that, "[w]here the minimum term of imprisonment required by *statute* ... is greater than the maximum of the applicable range [set forth in section 7B1.4(a)], the minimum term of imprisonment required by statute shall be substituted for the applicable range." (Emphasis added).

4. In July of 1990, Blackston was discharged from a community confinement program and returned to prison because a urine test had revealed the presence of cocaine metabolites in his body. Similarly, when asked by his probation officer on October 4, 1990, about his cocaine problem, Blackston insisted that he did not need Narcotics Anonymous.

5. Section 3583(e)(3) provides in pertinent part: "a person whose term [of supervised release] is revoked under this paragraph may not be required to serve more than 3 years in prison if the offense for which the person was convicted was a Class B felony." Violation of 21 U.S.C. § 845a is a Class B felony. *See* 18 U.S.C. § 3559(a)(2) (violation of 21 U.S.C. § 845a is a Class B felony).

6. According to the original sentence imposed on December 12, 1989, Blackston was obligated to pay a $250 special assessment and a $160 restitution "within the first two (2) years of supervised release."

dence to establish "possession of a controlled substance" for purposes of section 3583(g). Lastly, Blackston argues that the district court improperly ignored the Chapter 7 policy statements in sentencing him to three years imprisonment, the statutory maximum under section 3583(e)(3), instead of the two-year mandatory minimum under section 3583(g). We will address each of these contentions in turn.

## II.

As noted above, the district court stated that it was revoking Blackston's original sentence in its entirety and imposing a new sentence. If that is what the district court in fact did, it committed legal error, as the government essentially concedes. Section 3583(e)(3) of Title 18 of the United States Code states that a court may revoke *a term of supervised release,* and require the person to serve in prison all or part of the term of supervised release without credit for time previously served on postrelease supervision, if it finds by a preponderance of the evidence that the person violated a condition of supervised release.

(Emphasis added). In light of this language, the district court, upon determining that Blackston had violated Condition # 8 of his supervised release, should have said that it was revoking Blackston's *supervised release,* and that it was sentencing him to three years imprisonment for his violation of a condition of his supervised release.

The government contends that the court's reference to revocation of the original sentence was merely a verbal slip, i.e., that the court properly intended to revoke Blackston's supervised release, not his original sentence—and thus that we should not overturn the sentence based on a single misspoken phrase. The record substantiates this argument. The entirety of the court's comments at the revocation hearing are plainly more consistent with its sentencing Blackston for a violation of his supervised release than with its resentencing Blackston for his original criminal conduct. We note in particular that the court, in justifying its decision to sentence Blackston to the statutory maximum of three years, stated that he had breached the court's trust by violating a condition of his supervised release. The government's position is strengthened by Blackston's inability to identify any prejudice resulting from the district court's putative revocation of his original sentence. No such prejudice exists. As we will explain in this opinion, the district court's sentence of three years imprisonment was entirely consistent with both 18 U.S.C. § 3583 and the Chapter 7 policy statements.

The supervised release system is new, and it is understandable that experienced judges unconsciously may revert to the terminology of the pre-Sentencing Reform Act regime from time-to-time. Because we are satisfied that the district court intended to sentence Blackston for his violation of supervised release, and because Blackston has not alleged that he has suffered any harm as a result of the district court's alleged verbal error, we will not vacate the court's commitment order and send the case back for a pointless resentencing exercise. Rather, we will construe the district court's sentence as revoking the supervised release term, not his original sentence.[7]

---

**7.** Blackston also argues that the district court erred by declining to give him credit for the sixteen months imprisonment he had served pursuant to his original sentence. He asserts, initially, that the district court contravened the double jeopardy clause by failing to do so. This claim is predicated on Blackston's assertion that the district court improperly resentenced him on the original charge. He reasons that, unless he receives credit for the sixteen months he already has served on that charge, he will incur multiple punishments for the same crime in violation of the fifth amendment's double jeopardy clause. Because we have rejected Blackston's interpretation of the district court's order as resentencing him on the original charge, we reject his double jeopardy argument as well.

Blackston contends, more generally, that, the double jeopardy clause aside, the district court still was obliged to accord him credit for time already served. This argument has been roundly rejected by several federal courts. *See United States v. Scroggins,* 910 F.2d 768, 770 (11th Cir. 1990); *United States v. Celestine,* 905 F.2d 59, 60 (5th Cir.1990); *United States v. Medrano–Gonza-*

III.

A.

■ Section 3583(g) of Title 18 of the United States Code provides:

If the defendant is found by the court to be in the *possession* of a controlled substance, the court shall terminate the term of supervised release and require the defendant to serve in prison not less than one-third of the term of supervised release.

(Emphasis added). Applying the above language to the instant case, the district court made a threshold legal determination that "the presence of cocaine in [Blackston's] urine as evidenced by ... urinalysis constitute[d] ... circumstantial evidence" of possession of a controlled substance. The court then determined as a factual matter that Blackston's three positive urine samples indicating the presence of cocaine metabolites and his admission of drug use established "possession" of cocaine by a preponderance of the evidence. Based on the foregoing, the court held that the mandatory minimum set forth in section 3583(g) set a floor for its sentencing decision.

On appeal, Blackston challenges the district court's legal determination that evidence of drug *use* can be considered as circumstantial evidence of *possession*. He claims in essence that a finding of "possession" for purposes of section 3583(g) never ·can be predicated upon laboratory tests showing the presence of cocaine metabolites in the bloodstream, even if these test results are corroborated by an open admission of drug "use." He asserts instead that a finding of "possession" requires direct evidence that the drugs were in the actual physical possession of the defendant.

The government, in arguing that section 3583(g) affords the district court discretion to base a finding of "possession" on positive urinalyses and admitted drug use, relies heavily on Application Note 5 to Guidelines § 7B1.4. This Application Note provides in pertinent part:

The Commission leaves to the court the determination of whether evidence of drug usage established solely by laboratory analysis constitutes "possession of a controlled substance" as set forth in 18 U.S.C. §§ 3565(a) [revocation of probation] and 3583(g).

The government contends that this language demonstrates that the Sentencing Commission considered the use/possession question and decided to accord the district courts discretion to determine on a case-by-case basis whether the evidence of drug use is sufficient to establish circumstantially pre-use possession by a preponderance of the evidence.[8]

Because Blackston's challenge to the district court's consideration of evidence of drug use as circumstantial evidence of possession is essentially legal in nature, we will exercise *de novo* review. *See United States v. Ortiz,* 878 F.2d 125, 126–27 (3d Cir.1989).

B.

Blackston clothes his challenge to the district court's decision in the well-established rule of statutory construction that courts are bound by the plain meaning of clear and unambiguous statutory language. *See Smith v. Fidelity Consumer Discount Co.,* 898 F.2d 907, 909–10 (3d Cir.1990) (discussing the "plain meaning" rule). Invoking the historic dichotomy between "possession" and "use" in the criminal law, *see*

*lez,* 751 F.Supp. 931, 934 (D.Kan.1990); *United States v. Hoffman,* 733 F.Supp. 314, 315–16 (D.Alaska 1990). We will follow this authority. Violation of supervised release is a separate offense; hence, the district court is not required to reduce the defendant's sentence for violating a condition of supervised release by the amount of time the defendant served for the original criminal offense. We therefore hold that the district court did not err by declining to accord to Blackston credit for the sixteen months he already had served as part of his original sentence.

8. *See United States v. McDowell,* 888 F.2d 285, 291 (3d Cir.1989) ("a sentencing court ... need only base its determination on the preponderance of the evidence with which it is presented"); *see also* 18 U.S.C. § 3583(e)(3) (sentencing court must "find [ ] by a preponderance of the evidence that the person violated a condition of supervised release").

cases discussed *infra* at 888–91, he contends that the term "possession" in section 3583(g) is facially unambiguous, and that, as ordinarily defined and as understood by generations of lawyers, it includes only actual physical possession or the exercise of dominion or control, together with knowledge that the matter possessed is a controlled substance. Blackston asserts that "use," to the contrary, includes only the consumption or ingestion of the substance. To the extent that any ambiguity exists regarding the meaning of "possession," Blackston adds, the "rule of lenity" applies and requires that the ambiguity be construed against the government, *see Busic v. United States,* 446 U.S. 398, 406, 100 S.Ct. 1747, 1753, 64 L.Ed.2d 381 (1980) (" ' "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity" ' " (citations omitted)).

At first blush, Blackston's statutory construction argument appears compelling. Closer inspection, however, reveals it to be misdirected. Blackston is undoubtedly correct that the terms "possession" and "use" are by no means synonymous or interchangeable. But that is not the position urged by the government on appeal, nor is it what the district court held. The government contends, and the district court concluded, that evidence of drug "use" is circumstantial evidence that the user "possessed" the drug, perhaps only momentarily, prior to ingesting it. Once the issue is recast in these terms, Blackston faces an uphill battle, for evidence of drug use is undoubtedly probative of possession; that is, it has a tendency to make possession more probable than it would be without the evidence, *see* Fed.R.Evid. 401 (definition of "relevant evidence"). In our view, Blackston therefore must establish that Congress, in enacting section 3583(g), intended to preclude the government from adducing evidence of drug use to prove circumstantially possession of a controlled substance.

### C.

To resolve this issue, we turn first to the relatively straightforward language of 18 U.S.C. § 3583(g). *See supra* at 882. This section states simply that, if a defendant on supervised release is found to be in "possession of a controlled substance," the court must terminate the defendant's supervised release and require the defendant to serve in prison at least one-third of the term of his or her supervised release. Because section 3583(g) does not define the term "possession," we look to the common law for guidance. As Blackston points out, the word "possession," as it is used in criminal offense statutes, has a settled meaning, which includes both actual and constructive possession:

> A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it. A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.

Black's Law Dictionary 1047 (5th ed. 1979). Blackston apparently would read into this definition that possession may be established only by direct evidence of actual physical control or of the power and the intent to exercise dominion or control. However, we see nothing in the language of section 3583(g) or in the common law definition of the term "possession" that forecloses resort to circumstantial evidence, including evidence of drug use, to prove possession.

The language of section 3583(g) is also significant in that it does not qualify or modify the term in any respect. As a result, the government need establish only simple possession, as opposed to possession with intent to distribute. When the charge is simple possession, the quantity of the drugs is generally irrelevant (as long as the defendant is found to have possessed a "measurable amount") because the factfinder need not infer an intent to distribute. *Cf. United States v. Bernard,* 757 F.2d 1439, 1443 (4th Cir.1985) ("[q]uantity ... is not a consideration in cases of simple possession"); *United States v. Jeffers,* 524 F.2d 253, 258 (7th Cir.1975) (discussing the "measurable amount" standard). Thus, a defendant who is on supervised release and

who is found to possess any "measurable amount" of a controlled substance must be sentenced in accordance with section 3583(g).[9]

In contrast to the language of subsection (g), the overall structure of section 3583 does cast some doubt on the government's treatment of the use/possession distinction. The standard conditions of supervised release prohibit both the "use" and the "possession" of controlled substances.[10] These two prohibitions apparently are not included simply for the sake of repetition. Section 3583 instead prescribes very different results depending entirely on whether the defendant is found to have "possessed" a controlled substance or merely to have "used" one. Whereas a finding of "possession" mandates the revocation of supervised release and the imposition of a minimum prison term, a finding of "use" affords the district court discretion to revoke the defendant's supervised release, extend the term of supervised release, and/or modify the conditions of supervision. Reading section 3583 as a whole, therefore, it is plausible that Congress intended to differentiate sharply between "use" and "possession."

The foregoing discussion arguably reveals a latent ambiguity in section 3583 as regards the use/possession distinction. If so, Blackston contends, the rule of lenity dictates that the ambiguity should be construed against the government, *see supra* at 883. The Supreme Court recently has admonished, however, that we should refrain from reflexively resorting to the rule of lenity, especially so early in the interpretive process:

> The rule of lenity ... is not applicable unless there is a *"grievous* ambiguity or uncertainty in the language and structure of the Act, such that even after a court has " 'seize[d] every thing from which aid can be derived' " it is still "left with an ambiguous statute." "The rule [of lenity] comes into operation at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers."

*Chapman v. United States,* —— U.S. ——, ——, 111 S.Ct. 1919, 1926, 114 L.Ed.2d 524 (1991) (citations omitted and emphasis added). Congress's decision to include both the terms "use" and "possession" in the statute and to attach different consequences to each would *not* seem, at first, to be something that creates a "grievous" ambiguity in section 3583(g). We are required, however, to construe the statute only after all clues regarding Congress's intent have been exhausted. We therefore must forge ahead and see if there is anything else that sheds light on the intended meaning of section 3583(g).

### D.

Unfortunately, the history of section 3583(g) offers little direct insight into Congress's intent as regards the precise issue raised in this appeal.[11] Subsection (g) was

---

**9.** We note additionally that section 3583(g) does not impose any sort of temporal requirement on the defendant's possession. A defendant who possesses a controlled substance for a very short period of time is no less ensnared by section 3583(g) than a defendant who possesses the same substance for many weeks. This point further strengthens the government's position here, for a defendant who possesses a small amount of a controlled substance for only a brief time prior to consuming it would fall within the purview of section 3583(g).

**10.** These standard conditions, which derive directly from section 3583, were established by the Judicial Conference Committee on the Administration of the Probation System in July of 1987. Section 3583(d) instructs the courts to "order, as an explicit condition of supervised release, that the defendant not ... possess il-

legal controlled substances." Subsection (d) further provides that a court "may order, as a further condition of supervised release, ... any condition set forth as a discretionary condition of probation in section 3563(b)(1) through (b)(10) and (b)(12) through (b)(20)." Section 3563(b)(8) empowers the district court to order the defendant to "refrain from ... any *use* of a narcotic drug or other controlled substance ... without a prescription by a licensed medical practitioner." 18 U.S.C. § 3563(b)(8) (emphasis added). The discretionary condition set forth in section 3563(b)(8) has become one of the standard conditions imposed on every individual placed on supervised release.

**11.** *See generally* D. Adair, *Looking at the Law,* Federal Probation 65, 71 (Mar.1990) (discussing the legislative history of 18 U.S.C. § 3583(g) and

appended to 18 U.S.C. § 3583 as part of the massive Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690, 102 Stat. 4390 (1988). The Senate's proposed version of section 3583(g) differed from the version ultimately enacted in that it significantly limited the district court's range of options upon a finding that a defendant on supervised released had *used* a controlled substance. As originally drafted by the Senate, subsection (g) provided:

> [I]f the defendant tests positive for illegal use of controlled substances on two separate drug tests taken at least 3 weeks apart, the court shall, in addition to any other action which may be taken–
>
> (1) revoke the term of supervised release and require the defendant to serve a period of imprisonment pursuant to section (e)(4);
>
> (2) require the defendant to reside and participate in the program of a residential community treatment center or participate in an out-patient drug treatment program if residential treatment is unavailable or impractical; or
>
> (3) require the defendant to remain at his place of residence during non-working hours pursuant to subsection (e)(5).
>
> Notwithstanding any other provision of this section, if the defendant tests positive for illegal use of controlled substances on three separate urine drug tests taken at least 3 weeks apart, the court shall revoke the term of supervised release pursuant to subsection (e)(4) and require the defendant to serve in prison not less than one-third of the term of supervised release.

134 Cong.Rec. S15791 (daily ed. Oct. 13, 1988). Congressman Kastenmeier, in explaining the rationale for the House/Senate Conference Committee's rejection of the Senate language, emphasized the need to preserve flexibility:

> Section 7303 relates to the revocation of probation, parole or supervised release when such person has been adjudicated by the court to have violated a criminal law relating to possession of an illegal

whether that section *requires* revocation based

drug. The provisions in this section are derived from the senate amendments to the bill, but have been modified to preserve essential elements of judicial or parole commission discretion.

134 Cong.Rec. H11248 (daily ed. Oct. 21, 1988).

This emphasis on flexibility, as reflected by Congress's rejection of the Senate language, is not necessarily inconsistent with the government's construction of section 3583(g). The government does not suggest that subsection (g), in its present form, *requires* the revocation of supervised release every time a defendant submits a urine sample that tests positive for drug use. Rather, the government acknowledges that probation officers retain broad discretion to decide whether to commence a revocation proceeding based on positive urinalyses. In addition, the district court, because its factual findings are subject only to deferential review (for clear error), enjoys leeway under section 3583(g) in making its finding based on evidence of drug use that the defendant "possessed" a controlled substance. All that the government argues—and the history of section 3583(g) does not contradict it—is that the district court *may* base its finding of possession upon multiple positive drug tests and other circumstantial evidence such as admitted drug use. David Adair, Assistant General Counsel of the Administrative Office of the United States Courts, similarly interprets section 3583(g) and its history as not precluding resort to evidence of drug use to establish circumstantially possession of a controlled substance:

> Given th[e] history, it seems obvious that Congress did not intend that even a series of positive urinalysis results, much less a single positive, must necessarily result in revocation proceedings. Accordingly, probation officers should follow the procedures currently in effect with respect to the commencement of revocation proceedings based on positive urinalyses. *The current statute would require revocation and sentencing according to the provisions thereof, however, if revocation proceedings are commenced and the court specifically finds*

upon a single positive urinalysis).

*that an individual was in possession of a controlled substance pursuant to the positive urinalyses.*

Adair, *supra,* at 71 (emphasis added).[12]

Since its enactment in 1988, section 3583(g) has remained a subject of congressional debate and a candidate for further revision. As part of the National Drug Control Strategy Implementation Act of 1990, the Senate proposed to amend subsection (g) by inserting after the phrase "possession of a controlled substance" the following: "or unlawfully uses a controlled substance or refuses to cooperate in drug testing imposed as a condition of supervised release." 136 Cong.Rec. S6588 (daily ed. May 18, 1990).[13] This amendment—unlike the current version of subsection (g) but somewhat similar to the original Senate language—would have made revocation of supervised release mandatory upon a single positive urinalysis. That this amendment was not enacted seems to be evidence that Congress continues to favor the flexibility inherent in the present scheme. Beyond that, we think that the introduction of (and Congress's failure to enact) the above amendment materially advances neither the

government's nor Blackston's position on the use/possession issue. As the Supreme Court has stated, "it is questionable whether [the introduction of such a bill in the Senate] even amount[s] to subsequent legislative history—itself an unreliable guide to legislative intent." *Chapman,* at ——, 111 S.Ct. at 1927 n. 4.[14]

Having reviewed the legislative history of section 3583(g), we are confident that Congress did not intend to preclude the courts from considering evidence of drug use as circumstantial evidence of possession. More importantly, we are now satisfied that neither the language of subsection (g) nor the overall structure of section 3583 creates a "grievous" ambiguity or uncertainty regarding the interplay between use and possession under the statute. Accordingly, we find that there is no need to apply the rule of lenity in interpreting section 3583(g).

### E.

Although the legislative history is generally inconclusive, the case law addressing

---

**12.** The remarks of Senator Helms, one of the sponsors of section 3583(g), demonstrate that Congress, in adding subsection (g) to section 3583, also was concerned about the problem of drug *use* by defendants on supervised release. Citing numerous studies showing "a direct link between drug use and criminal behavior," Senator Helms commented:

> [M]y point is that in light of the clear correlation between drug use and criminal behavior, one way to cut down on the rate of recidivism among criminals who have been conditionally released from prison is to terminate that release immediately upon the first indication of illegal drug activity. That is the reason for my amendment.
>
> Mr. President, by requiring the termination of conditional release for individuals who possess illegal drugs, we will cut down on the number of repeat offenses and, I hope, also cut down on the incidence of drug use among those who are released.

134 Cong.Rec. S17321 (daily ed. Oct. 21, 1988). Unfortunately, Senator Helms's comments do not shed any light on Congress's intended interplay between drug use and possession under section 3583(g).

**13.** Had subsection (g) been amended as proposed, it would have read as follows:

> If the defendant is found by the court to be in possession of a controlled substance *or un-*

> *lawfully uses a controlled substance or refuses to cooperate in drug testing imposed as a condition of supervised release,* the court shall terminate the term of supervised release and require the defendant to serve in prison not less than one-third of the term of supervised release.

(Emphasis indicates the proposed revision).

**14.** On January 14, 1991, Senator Thurmond proposed to amend section 3583(g) by deleting the mandatory minimum prison term and by instructing the district court to sentence the defendant in accordance with section 3583(e)(3). Senator Thurmond's proposed version of subsection (g) provides:

> If the defendant is found by the court to be in *unlawful* possession of a controlled substance, the court shall *revoke* the term of supervised release and require the defendant to serve *a term of imprisonment authorized under subsection (e)(3).*

137 Cong.Rec. S887 (daily ed. Jan. 14, 1991) (emphasis indicates the proposed revision). If enacted, Senator Thurmond's proposed amendment would accord the Sentencing Commission greater flexibility in promulgating sentencing guidelines or policy statements for the sanctioning of defendants who, while on supervised release, are found to possess a controlled substance. As of this writing, Congress has taken no action on this proposal.

the use/possession issue in the context of supervised release has come down squarely on the government's side. Indeed, these cases, which essentially ground their treatment of the use/possession question on the metaphysical notion that someone cannot voluntarily consume a controlled substance without at least momentary prior possession, apparently have thought the resolution of this issue to be so self-evident that it does not merit serious explanation or analysis.

In *United States v. Kindred*, 918 F.2d 485 (5th Cir.1990), for example, the Fifth Circuit upheld a revocation of supervised release and an imposition of a two-year prison sentence (two-thirds of the term of supervised release) based on, among other things, evidence that the defendant had tested positive for drugs and admitted to purchasing and using controlled substances. Although the district court had not relied expressly upon it, the *Kindred* court opined that 18 U.S.C. § 3583(g) interred the defendant's appeal:

> The problem that [the defendant] faces is the mandatory language of 18 U.S.C. § 3583(g). Section 3583(g) required the district court to revoke the supervised release and impose a prison term not less than one-third of the term of supervised release once it found that [the defendant] possessed a controlled substance.

*Id.* at 487. That there was no *direct* evidence establishing the defendant's actual physical possession of a controlled substance was of no real consequence to the court. It simply noted in a footnote that "[k]nowing use of drugs is akin to possession." *Id.* at 487 n. 3.

The *Kindred* court, in stating that "[k]nowing use of drugs is akin to possession," cited *United States v. Dillard*, 910 F.2d 461 (7th Cir.1990), as its sole authority. In *Dillard*, the Seventh Circuit affirmed a revocation of supervised release based upon the district court's finding that the defendant, *inter alia*, had admitted to

using cocaine on one occasion, and that laboratory testing had confirmed this admission. *Id.* at 464. As an alternative ground for upholding the district court's revocation, the Seventh Circuit stated that the defendant, by using cocaine, had violated the first condition of his supervised release, which required that the defendant not "commit another federal, state or local crime." The *Dillard* court was sufficiently confident of its reasoning that it too relegated its entire discussion to a footnote:

> Cocaine is a Schedule II controlled substance, possession of which is unlawful. Knowing use of cocaine, which [the defendant] admitted to here, requires possession, even if only momentarily. Thus, [the defendant's] admitted use of the drug, confirmed by laboratory testing, was illegal under federal and state law. *See United States v. Rodriguez*, 831 F.2d 162, 167 (7th Cir.1987) (possession of controlled substances may be actual or constructive and may be established by direct and circumstantial evidence).

*Id.* at 464 n. 3 (citations omitted). This violation "alone," the Seventh Court held, provided a sufficient basis for the revocation of supervised release. *Id.* at 464–65.

In *United States v. Graves*, 914 F.2d 159 (8th Cir.1990), the defendant, who had admitted to his probation officer that he was using drugs, challenged what he perceived as the district court's reliance on 18 U.S.C. § 3583(g) in revoking his supervised release and sentencing him to eighteen months imprisonment.[15] Although the Eighth Circuit declined to reach the defendant's claim of error,[16] its comments suggest that it would have held that the defendant's admission of drug use constituted sufficient evidence of possession for purposes of section 3583(g). This proposition was in the Eighth Circuit's view so intuitive that its analysis was consigned to a two-word parenthetical: "it is not necessary for this court to reach ... the question of whether [the defendant's] *admission of*

---

**15.** The defendant claimed that he had received inadequate notice under Fed.R.Crim.P. 32(a)(2)(A) of the government's allegation of possession of a controlled substance. *Id.* at 160.

**16.** The court stated that it was "unclear from the record whether the district court applied § 3583(g) in imposing the sentence." *Id.* at 161.

*drug use (thus possession)* in the revocation hearing constituted a waiver of the notice requirements." *Id.* (emphasis added).[17]

Likewise, in *United States v. Ramos–Santiago,* 925 F.2d 15, 16 (1st Cir.1991), the defendant, who had tested positive for narcotics use on sixteen different occasions over a nine-month period and had admitted to violating a condition of his supervised release, asserted on appeal that the district court erred in sentencing him to two years imprisonment (two-thirds of the term of supervised release) following revocation of his supervised release. The First Circuit rejected this contention, stating simply:

> The court here acted in compliance with § 3583(g): it revoked release and imposed a prison term (two years) *not less than* one-third of [the defendant's] three year supervised release term. We find no legal error in the punishment imposed.

*Id.* at 18 (emphasis in original).[18]

Also instructive is a state court decision, *Brown v. State,* 760 S.W.2d 748 (Tex.Ct. App.—Tyler 1988), dealing with an order revoking probation for "possession" of marijuana based entirely on evidence that the defendant's urine had tested positive for marijuana. At the probation revocation hearing, the defendant denied smoking marijuana at any time and testified that he had tested positive for marijuana probably due to his passive inhalation of marijuana smoke. This latter claim, however, was contradicted by expert testimony that the level of marijuana found in the defendant's urine exceeded that which could have resulted from inhalation of secondary marijuana smoke. The *Brown* court, after noting that a preponderance of the evidence standard applies in probation revocation cases, determined that the presence of such a high concentration of cannabinoids in the defendant's urine constituted circumstantial evidence that the defendant first possessed a usable quantity of marijuana:

> The fact that [the defendant] had the prohibited drug within his system is circumstantial evidence that he was in possession of a usable quantity of the drug prior to taking it.... We find that the incriminating circumstances of a concentration of marijuana in [the defendant's] urine greater than would exist from passive inhalation, excludes every reasonable hypothesis other than his guilt.

760 S.W.2d at 750.

### F.

The use/possession issue also has been considered in state cases considering whether evidence of use of a controlled substance is sufficient to support a criminal *conviction* for possession. This genre of cases, upon closer scrutiny, does not buoy Blackston's argument to the extent that he would have us believe. Indeed, some of these cases appear to bolster the government's position on the use/possession question. For purposes of analysis, we will divide these cases into three rough groups: (1) those upholding a conviction for possession based on evidence of drug use; (2) those holding that the State's evidence of drug use was insufficient to sustain a criminal conviction for possession, but offering reasoning that is consistent with the government's arguments in this case; and (3) those holding that drug

---

**17.** Any lingering uncertainty about the Eighth Circuit's position on the use/possession question was resolved a year later in *United States v. Oliver,* 931 F.2d 463 (8th Cir.1991). The defendant in *Oliver* had "tested positive for cocaine and THC on numerous occasions." *Id.* at 464. Based on this evidence, the district court found that the defendant had possessed controlled substances, revoked the defendant's supervised release, and sentenced the defendant to eighteen months imprisonment (one-half of the term of supervised release). On appeal, the Eighth Circuit held, without so much as a word of discussion, that the one-third minimum term of 18

U.S.C. § 3583(g) controlled the district court's post-revocation sentencing decision.

**18.** Accord *United States v. Alli,* 929 F.2d 995, 996 (4th Cir.1991):

> The [defendant] *twice tested positive for cocaine* prior to the revocation of his parole. This was a violation of the mandatory condition of his probation as set forth in the terms of his probation, as required by 18 U.S.C. § 3563(a)(3), and that he not *possess* an illegal controlled substance.

(Footnote omitted and emphases added).

"use" and "possession" of a controlled substance are separate crimes, and that therefore the former cannot be established circumstantially through evidence of the latter. We will discuss one representative case from each group.

### 1.

*Franklin v. State*, 8 Md.App. 134, 258 A.2d 767 (1969), is typical of the first category. The defendant in *Franklin*, after being brought into a hospital emergency room, admitted to an attending physician that he had overdosed on heroin, and also exhibited symptoms consistent with this admission. Based on this evidence, the State charged the defendant with possession of heroin. At trial, however, the defendant testified that he had not injected heroin, but rather had been drinking heavily on the night in question, and that he did not recall making any of the alleged incriminating statements to the hospital physician. Rejecting the defendant's trial testimony, the trial court found the defendant guilty of unlawful possession of narcotics. This conviction was upheld on appeal, notwithstanding the appellate court's recognition that such a decision likely would deter drug users from seeking medical attention.

> The court noted generically that
>
> evidence showing that a person has a prohibited narcotic drug within his system, while not *per se* constituting possession or control ..., would tend to show circumstantially that he was in posses-

sion and/or control of the drug prior to taking it.

*Id.* at 138, 258 A.2d at 769. Applying this understanding to the facts before it, the *Franklin* court determined that the evidence of defendant's drug use was sufficient to support his conviction for possession:

> [defendant's] statement "that he had taken an overdose of heroin intravenously," after which he had "passed out," justifies not only the inference that prior to taking such drug, he necessarily was in possession of it, but also the inference, absent affirmative contradictory evidence, that the drug was self-administered, or administered by another at his direction (thus placing him in constructive possession of the drug). That [defendant's] physical condition was consistent with his having taken an overdose of heroin is clear from [the hospital physician's] testimony.

*Id.* at 140–41, 258 A.2d at 770–71 (footnote omitted).[19]

### 2.

The Supreme Court of Kansas's decision in *State v. Flinchpaugh*, 232 Kan. 831, 659 P.2d 208 (1983), typifies the second category. In *Flinchpaugh*, samples of the defendant's blood, which were extracted following an automobile accident, revealed the presence of cocaine and/or benzoylecgonine (a cocaine metabolite). Although it lacked direct evidence of how or when the

---

**19.** Similarly, the Supreme Court of Georgia in *Green v. State*, 260 Ga. 625, 398 S.E.2d 360 (1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2059, 114 L.Ed.2d 464 (1991), upheld a conviction for possession of cocaine that was based on urinalysis test results showing the presence of cocaine metabolites in the defendant's urine sample. Although the Court affirmed the judgment of conviction, it disapproved of the Georgia Court of Appeals' oft-repeated statement that "evidence of cocaine metabolites in an individual's urine is 'direct positive evidence' that the individual ingested cocaine at some time in the immediate past before the urine sample was given, and had therefore possessed the cocaine he subsequently ingested." *Id.* 260 Ga. at 625, 398 S.E.2d at 361; *see Stevens v. State*, 165 Ga.App. 814, 815, 302 S.E.2d 724, 725 (1983); *Buffington v. State*, 190 Ga.App. 365, 365, 378 S.E.2d 884, 885 (1989); *Sparks v. State*, 195

Ga.App. 589, 590, 394 S.E.2d 407, 408 (1990). Rather, the Georgia Supreme Court explained, "the presence of cocaine metabolites in body fluid is only *circumstantial* or *indirect* evidence." 260 Ga. at 626, 398 S.E.2d at 362 (emphases in original).

*See also People v. Hellenthal*, 186 Mich.App. 484, 485–86, 465 N.W.2d 329, 330 (1990) ("Circumstantial evidence and reasonable inferences arising from the evidence are sufficient to establish possession."); *Lavigne v. State*, 782 S.W.2d 253, 257 (Tex.Ct.App.—Houston [14th Dist.] 1989) (upholding conviction for possession of cocaine based on the following circumstantial evidence: the defendant's appearance and demeanor at the time of her arrest; the presence of a fresh needle mark on the defendant's arm and a syringe containing traces of cocaine; and the defendant's admission that she just had injected cocaine).

chemicals were introduced into the defendant's bloodstream, the State charged the defendant with possession. The trial court, following a preliminary hearing, dismissed this charge; the State appealed; and the Supreme Court of Kansas affirmed. In so doing, the Court held that the mere presence of a controlled substance in the defendant's bloodstream was insufficient circumstantial evidence to prove beyond a reasonable doubt that the defendant had possessed the substance before ingesting it.[20]

Although this result initially appears at odds with the government's position here, the *Flinchpaugh* Court's analysis does not completely undercut the government's argument with respect to section 3583(g). The Court stated:

> Discovery of a drug in a person's blood is circumstantial evidence tending to prove prior possession of the drug, but *it is not sufficient evidence to establish guilt beyond a reasonable doubt.* The absence of proof to evince knowledgeable possession is the key. The drug might have been injected involuntarily, or introduced by artifice, into the defendant's system. The prosecutor did not establish that defendant ever knowingly had control of the cocaine.

*Id.* at 835, 659 P.2d at 212 (emphasis added). In fact, the Court acknowledged that, had the State adduced "other corroborating evidence," there might have been sufficient evidence to prove possession of cocaine be-

yond a reasonable doubt. *Id.* at 836, 659 P.2d at 212.

As the above quoted passage reflects, the situation confronting us is clearly distinguishable from that which faced the Supreme Court of Kansas in *Flinchpaugh.* To gain revocation of supervised release, the government need not establish possession beyond a reasonable doubt; instead, a showing of possession by a preponderance of the evidence suffices. *See* 18 U.S.C. § 3583(e)(3). Moreover, the government in this case did produce "other corroborating evidence" beyond the positive urine tests— to wit, Blackston's admission that he had used cocaine on three separate occasions since his release from prison. Such an admission excludes the only other reasonable explanations of how cocaine metabolites were introduced into Blackston's body, namely, that the drugs were ingested involuntarily, administered by trick, or inhaled passively from the environment.[21]

### 3.

There is, however, a category of cases that clearly repudiates the government's position on the use/possession issue. Most notable of this group is *People v. Spann,* 187 Cal.App.3d 400, 232 Cal.Rptr. 31 (3d Dist.1986), in which the defendant, an inmate in a county prison, tested positive for Valium use and was charged with violating jail rules which proscribed possession of

---

**20.** The Court also rejected the contention (one which the government does *not* advance here) that the presence of cocaine in the defendant's bloodstream by itself established possession of the substance: "Once a controlled substance is within a person's system, the power of the person to control, possess, use, dispose of, or cause harm is at an end. The drug is assimilated by the body." *Id.* 232 Kan. at 834, 659 P.2d at 211.

See *also State v. Hornaday,* 105 Wash.2d 120, 127, 713 P.2d 71, 76 (1986) ("The term 'possession' of liquor should not be construed to include liquor which has been assimilated by the body."); *State v. Downes,* 31 Or.App. 1183, 1184, 572 P.2d 1328, 1330 (1977) ("Obviously, after a drug is ingested or injected into the human body, the host body can no longer exercise dominion or control over it."); *State v. Reed,* 34 N.J. 554, 572, 170 A.2d 419, 429 (1961) ("We note that the containment of a consumed narcotic within a person's blood or respiratory system is not constructive possession.").

**21.** Relying on *Flinchpaugh* as its primary authority, the Court of Appeals of Minnesota has held that the presence of a controlled substance in a person's urine is not "sufficient circumstantial evidence to prove prior possession *beyond a reasonable doubt absent probative corroborating evidence of actual physical possession." State v. Lewis,* 394 N.W.2d 212, 217 (Minn.Ct.App.1986). As the highlighted language evinces, *Lewis* too is distinguishable from the instant case in that a more stringent burden of proof applied and the defendant did not admit to voluntary use of the controlled substance.

See *also State v. Reid,* 66 Wash.2d 243, 247, 401 P.2d 988, 991 (1965) ("Of course, we recognize that often the user of narcotics is also a possessor. If the prosecutor is able to prove each separate crime, then he could charge a person with violations of either or both statutes.").

narcotic substances without a prescription. The allegation that the defendant had "possessed" Valium was corroborated by his appearance prior to the blood test: "A correction officer observed that his speech was slurred, he was unstable on his feet, and that his eyes were partially closed as though he were intoxicated." *Id.* at 402, 232 Cal.Rptr. at 31. After recounting a brief history of California drug laws, the *Spann* court concluded, however, that evidence of "use" of a controlled substance cannot prove circumstantially its "possession":

> The history of the drug laws shows a consistently different classification and punishment of the use and possession of regulated substances, with use (or being under the influence) invariably treated as less culpable or not culpable at all. Given this differential treatment, it is obvious that the Legislature did not intend mere use to constitute possession. Nor ... may that result be achieved indirectly by transmuting the one into the other by circumstantial reasoning.

*Id.* at 406, 232 Cal.Rptr. at 34. Read broadly, *Spann* arguably stands for the proposition that, even when there is "other corroborating evidence," and even if the preponderance of the evidence standard were to apply, evidence of drug use still cannot be considered as circumstantial evidence of possession.[22]

### G.

Although the issue is not free from doubt, we are persuaded by the above survey of the jurisprudence, and our analysis of the statute and its history, that the district court did not err in considering Blackston's three positive urine samples and his admission of drug use as circumstantial evidence of possession of a controlled substance for purposes of 18 U.S.C. § 3583(g). In addition, we conclude that

section 3583(g) accords the district court sufficient discretion in making this factual finding to satisfy Congress's apparent desire to preserve judicial flexibility in this area.

This holding also impresses us as being the most consistent with general evidentiary law, notably Fed.R.Evid. 402, which provides:

> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority.

That evidence of use is logically relevant to demonstrating possession is, in our view, indisputable. *See Reed,* 34 N.J. at 557, 170 A.2d at 421 ("Use is ordinarily preceded by the user's possession of the drug."). Section 3583(g) does not render this relevant evidence inadmissible by limiting what the district court can consider in making a finding of possession.

Our resolution of the use/possession issue is, we believe, entirely consistent with the case law. Every court that has grappled with this issue in the context of revocation of supervised release has held that evidence of drug use may be considered as circumstantial evidence of pre-use possession. Although the state court decisions involving *criminal prosecutions* for possession are not nearly so uniform, the clear majority position is that evidence of drug use is circumstantial evidence tending to show prior possession. Indeed, most of the state courts that have rejected the result which the government seeks here did so only because a more stringent burden of proof applies to criminal prosecutions and because the State failed to adduce "other corroborating evidence" such as an admission of voluntary drug use.[23]

---

**22.** *See also Downes,* 31 Or.App. at 1186, 572 P.2d at 1330 (noting that, if evidence of drug use was sufficient circumstantial evidence to establish possession, "the apparent legislative scheme of treating illegal use as a less serious offense than illegal possession would be thwarted").

**23.** This also seems to be the result contemplated by the Sentencing Commission in drafting Application Note 5 to Guidelines § 7B1.4, which explicitly "leaves to the court the determination of whether evidence of drug usage established solely by laboratory analyses constitutes 'possession of a controlled substance.'"

■ We further recognize that, as a general policy matter, possession of a controlled substance is more culpable than its use. This proposition was summarized succinctly by the Supreme Court of Washington in *Reid:* "Illegal possession is potentially much more dangerous to society than illegal use, because the possessor may dispense the drugs to others, whereas the user is affecting mainly himself." 66 Wash.2d at 247, 401 P.2d at 991. But, as we mentioned earlier, section 3583(g) applies to possession for personal consumption, as well as possession with intent to distribute. In adding subsection (g) to section 3583, Congress was concerned with much more than simply deterring defendants on supervised release from selling controlled substances. It instead sought to compel these defendants to avoid all contact with illicit drugs. This fact, which is evidenced by Senator Helm's remarks, *see supra* n. 12, further persuades us to permit the district court to consider positive urinalyses and other corroborating evidence as circumstantial proof of possession.[24]

### H.

■ As a factual matter, we review the district court's determination that Blackston "possessed" a controlled substance for clear error. *See United States v. McDowell*, 888 F.2d 285, 291–92 (3d Cir.1989). Here, Blackston conceded at the revocation hearing that he had tested positive for cocaine metabolites on three consecutive weeks, and that he had admitted to his probation officer to using drugs on three

occasions since his release from prison. There is thus no allegation in this case that the defendant ingested the drugs involuntarily, or that the drugs were administered by trick or guile.

Based on this uncontested evidence, we cannot say that the district court committed clear error in finding *by a preponderance of the evidence* that Blackston "possessed" (either by knowing physical possession or by knowing exercise of dominion or control) a measurable amount of cocaine, even if only for a moment, prior to consuming it. "[T]he preponderance standard 'simply requires the trier of fact "to believe that the existence of a fact is more probable than its nonexistence"'...." *Brown v. Fauver*, 819 F.2d 395, 396 (3d Cir.1987) (citations omitted). In light of this relaxed burden of proof and our deferential scope of review, we will affirm the district court's finding that Blackston "possessed" cocaine, and its holding that the mandatory minimum set forth in 18 U.S.C. § 3583(g) therefore applied at sentencing.

### IV.

■ Lastly, we must determine whether the district court improperly sentenced Blackston to three years imprisonment, the statutory maximum under section 3583(e)(3), rather than two years, the mandatory minimum under section 3583(g). Guidelines § 7B1.4(b)(2) provides:

Where the minimum term of imprisonment required by statute, if any, is great-

---

24. We are not unmindful of the public policy implications of our decision in this case. There presently exists a profound overcrowding problem in federal prisons. As of June 13, 1991, the population of the Federal Bureau of Prisons was 62,770—which is about 63% over rated capacity. *See* Federal Prison System, *Monday Morning Highlights* (June 17, 1991). This problem would be exacerbated by a rule *requiring* revocation of supervised release whenever a defendant tests positive for drug use. Our decision today, however, should not contribute greatly to this problem. We merely hold that a district court is permitted in finding that the defendant "possessed" a controlled substance to consider positive urinalyses and other corroborating evidence regarding drug use. Additionally, probation officers retain discretion in deciding wheth-

er to commence revocation proceedings based on positive urinalyses.

By the same token, we hope that our decision will not hinder efforts to rehabilitate drug users who are on supervised release. A large number of defendants on supervised release occasionally test positive for drug use. A single positive urinalysis, however, is a poor indicator of whether supervised release is working for the defendant. For many of the defendants who, at one time or another, test positive for drug use, treatment and rehabilitation continue to make more sense than do revocation and imprisonment. Our decision today, we believe, affords probation officers and district courts sufficient flexibility to take these factors into account and to consider what is best for the defendant and society.

er than the maximum of the applicable range, *the minimum term of imprisonment required by statute shall be substituted for the applicable range.* (Emphasis ˙added). Accordingly, because 18 U.S.C. § 3583(g) required a minimum term of imprisonment (two years) that was greater than the maximum of the applicable sentencing range (ten months), two years replaced four to ten months as the sentence prescribed by the Chapter 7 policy statements. Blackston argues on appeal that the district court accorded insufficient weight to this fact in deviating from the two-year mandatory minimum and in sentencing him to the three-year statutory maximum.

Blackston's argument misapprehends the nature of the Chapter 7 policy statements. The United States Sentencing Commission Guidelines Manual makes clear that the Chapter 7 policy statements are not "guidelines." Whereas guidelines are binding on the courts, policy statements are merely advisory. *See* Guidelines Ch. 7, Part A3(a).[25] Realizing that events were proceeding rapidly, and that, lacking experience in the area, it needed additional time to consider the complex issues relating to revocation of probation and supervised release, the Sentencing Commission opted for advisory policy statements in order to maximize flexibility. *See id.* ("[T]he Commission anticipates that, because of its greater flexibility, the policy statement option will provide better opportunities for evaluation by the courts and the Commission."). In issuing only advisory policy statements, the Sentencing Commission sought to set in motion an "evolutionary process," of which the policy statements were only the first step. *See id.* Ch. 7, Part. A5. After monitoring and evaluating feedback from judges, probation officers, and practitioners, the Sentencing Commission expected to ˙promulgate formal revocation guidelines. *See id.* ˙

Consistent with the "advisory" nature of the Chapter 7 policy statements, the district court, in sentencing a defendant whose supervised release has been revoked, is required only to *"consider ...* any pertinent policy statement issued by the Sentencing Commission ... that is in effect on the date the defendant is sentenced." 18 U.S.C. § 3553(a)(5) (emphasis added); *see also id.* § 3583(e) (referring the district court to, among other things, section 3553(a)(5)). In addition to the Chapter 7 policy statements, the district court also is directed by section 3583(e) to "consider" several other factors listed in section 3553(a). These additional factors include: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need to afford adequate deterrence to criminal conduct; (4) the need to protect the public from further crimes of the defendant; and (5) the need to provide the defendant with appropriate treatment. The district court in this case, cognizant of its statutory obligations, "considered" the Chapter 7 policy statements (i.e., the two-year sentence prescribed by Guidelines § 7B1.4(b)(2)), but "rejected" them.

Blackston alternatively assails the district court's sentencing decision, claiming that, even if the court was entitled to deviate from the two-year mandatory minimum, his sentence must be vacated because the court neglected to detail with the requisite specificity its reasons for imposing a three-year prison sentence. When working with policy statements (as opposed to guidelines), the district court is not required, in considering revocation of supervised release, to justify its decision to impose a sentence outside of the prescribed range (in this case two years) by finding an aggravating factor that warrants an upward departure under 18 U.S.C. § 3553(b). In fact, there is no requirement that the district court make specific findings with

25. Chapter 7 Part A3(a) states:
At the outset, the Commission faced a choice between promulgating guidelines or issuing *advisory* policy statements for the revocation of probation and supervised release. After considered debate and input from judges, pro-

bation officers, and prosecuting and defense attorneys, the Commission decided, for a variety of reasons, initially to issue policy statements.
(Emphasis added).

respect to each of the section 3553(a) factors that it considered. *See United States v. Graves*, 914 F.2d 159, 160 (8th Cir.1990). At the time of sentencing, the district court simply must state on the record its *general* reasons under section 3553(a) for rejecting the Chapter 7 policy statements and for imposing a more stringent sentence. *See* 18 U.S.C. § 3553(c); *see also United States v. Lockhard*, 910 F.2d 542, 546 (9th Cir.1990).

■ The district court in this case offered two reasons for its decision to sentence Blackston to three years imprisonment rather than two. *See supra* at 880. The court began by asserting that Blackston, in violating the conditions of his supervised release, had breached the court's trust. The district court then emphasized a general deterrence rationale:

> I want [to send a] message ... that this kind of activity is going to be dealt with swiftly ..., and for those who get involved in drugs, they risk going to jail for a long period of time.
>
> Even if [they] get out on supervised release there's a long rope that will reach out for a long period of time so [that they] can be dragged in here to account for [their] activities.

Both of these reasons are cognizable under 18 U.S.C. § 3553(a).

The first explanation, the breach of trust rationale, relates to "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Blackston, who had been convicted of a narcotics offense, breached the conditions of his supervised release in an egregious manner. The first three urine specimens that Blackston submitted following his release from prison all tested positive for cocaine metabolites. Blackston also freely admitted to his probation officer that he was using cocaine, resisted his probation officer's suggestion to seek treatment, and failed to submit a fourth urine specimen. These violations, occurring immediately on the heels of his release from prison and relating directly to the conduct for which he originally was convicted, surely bespeak a breach of trust.

The second explanation, the general deterrence rationale, is countenanced by 18 U.S.C. § 3553(a)(2)(B), which instructs the court to consider the need "to afford adequate deterrence to criminal conduct." The district court in this case endeavored to send a message that those who follow in the defendant's footsteps and involve themselves with narcotics will be dealt with severely. More specifically, the court hoped to impress upon the defendant's counterparts that the supervised release portion of a narcotics sentence is something to be taken very seriously, for if a defendant violates the conditions of supervised release, he or she runs a very real risk of being reincarcerated for a significant period of time. This message is in our view entirely consistent with section 3553(a)(2)(B).

In sum, we find the district court's proffer of the above two reasons to be sufficiently detailed to satisfy the aforedescribed standard. Having also determined that the district court's enumerated reasons were consistent with section 3553(a), all that remains to be decided is whether the court's sentence of three years imprisonment was proper. When there is no applicable sentencing guideline (Chapter 7 policy statements are not "sentencing guidelines"), and when the district court sentences within statutory limits (Blackston concedes that the district court did not exceed its authority under section 3583(e)(3)), we are empowered to review the court's sentence and will not disturb it unless it is "plainly unreasonable," 18 U.S.C. § 3742(e)(4). *See Scroggins*, 910 F.2d at 769. In direct violation of the terms of his supervised release, Blackston began using cocaine immediately after his release from prison. During Blackston's brief term of supervised release, he failed to submit a single urine specimen that tested negative for cocaine metabolites. More significantly, Blackston has evinced a resistance (if not outright hostility) towards treatment of any sort. Given this combination of circumstances, we cannot say that the district court's sentence is "plainly unreasonable."

## V.

For the foregoing reasons, the order of the district court revoking Blackston's term of supervised release and imposing a sentence of three years imprisonment will be affirmed.

NYGAARD, Circuit Judge, concurring.

I believe the primary issue before this court is quite simple: does voluntary drug use established solely by laboratory analysis constitute "possession" for purposes of 18 U.S.C. § 3583(g)? That is the issue the Commission has asked the courts to decide.[1] That is the issue the district court decided.[2] That is what appellant contests.[3]

I disagree with the majority view that "possession" is an ambiguous term as used in § 3583(g), such that resort to legislative history is required to decide this issue. I see no reason to agonize over the legislative history underlying Congress' use of the term. Possession has a plain meaning. Either Blackston voluntarily possessed cocaine in the circumstances of this case, or he did not.

Second, I disagree with the majority's effort to recognize what it calls the "flexibility inherent in the present scheme." (At 886) The straightforward language contained in 3583(g) of Title 18 leaves little judicial flexibility. It states simply that if the defendant is found by the court to be in possession of a controlled substance it *shall* terminate his supervised release. Similarly, the Commission's Application Note No. 5 does not grant judicial flexibility except to leave it to the courts to decide whether use established by laboratory analysis constitutes possession. Thus, I cannot see that either Congress or the Commission offers the judicial flexibility the majority creates.

Finally, I disagree with the majority's conclusion that evidence of voluntary drug use is merely probative of possession, or merely has a tendency to make possession more probable. Under their view of "possession" under § 3583(g), a probationer intending drug use who is caught possessing drugs in hand necessarily loses his supervised release, whereas a probationer in similar circumstances who quickly ingests the same drugs unnoticed just before a search would qualify for judicial flexibility. Surely, Congress and the Commission did not intend § 3583(g) to treat preferentially those who, by design or happenstance, avoid a finding of drug possession by means of voluntary use. In my view, drug use established by laboratory analysis constitutes drug possession for purposes of § 3583(g).

The laboratory analysis in this case established that Blackston had drugs in his body. Blackston admits his voluntary use. With that, he should not be able to successfully argue he never possessed the drugs he voluntarily used. I would hold that laboratory analysis confirming illegal drug use alone constitutes "possession" for purposes of 18 U.S.C. § 3583(g).[4]

---

1. Application Note No. 5 to Guidelines § 7B1.4 provides:
   The Commission leaves to the court the determination of whether evidence of drug usage established solely by laboratory analysis constitutes possession ...

2. The district court found that "the presence of cocaine in the urine [of Blackston] as evidenced by the urinalysis constitutes possession ..."

3. Blackston contends on appeal that the district court erred and "submits that the district court's finding of 'possession' cannot be predicated on laboratory analysis ... and/or admitted 'use' of controlled substances ..."

4. So holding would establish the same bright line rule adopted in other circuits. *United States v. Dillard,* 910 F.2d 461, 464, n. 3 (7th Cir.1990) (Where, as here, use was confirmed by admission and lab analysis, the court concluded that knowing use of cocaine requires possession, even if momentarily.) *United States v. Kindred,* 918 F.2d 485, 465, n. 3 (5th Cir.1990) (use admitted and confirmed by lab analysis. The court following *Dillard* said "knowing use of drugs is akin to possession.") *See also, United States v. Graves,* 914 F.2d 159, 161 (8th Cir. 1990) (drug use equivalent to possession.)