NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2390
_____

UNITED STATES OF AMERICA

v.

DAMON JACKSON,
Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 07-cr-70)
District Judge:  Hon. Alan N. Bloch
_____

Submitted Under Third Circuit LAR 34.1(a)
January 10, 2013

Before:  RENDELL, FISHER, and JORDAN, *Circuit Judges*.

(Filed: January 11, 2013)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Damon Jackson appeals his sentence from the United States District Court for the

Western District of Pennsylvania for violating the terms of his supervised release.  The

District Court determined that Jackson, who conceded to testing positive for marijuana

and cocaine, had violated the terms that he not possess any controlled substances and that

he not commit any federal, state or local crime. The Court concluded that his conduct constituted a Grade B violation under § 7B1.1(a) of the United States Sentencing Guidelines, and it thus revoked his supervised release and imposed a sentence of eighteen months' imprisonment and eighteen months' supervised release. We will affirm.

## I.      Background

Jackson's underlying conviction was for conspiracy to possess with intent to distribute less than 100 grams of heroin, in violation of 21 U.S.C. § 846. His sentence included 30 months' imprisonment followed by 3 years' supervised release. That sentence was at the bottom of the guidelines range of 30 to 37 months' imprisonment, based on a total offense level of 15 and a criminal history category of IV. Two of the terms of Jackson's supervised release required that he not commit any federal, state, or local crime, and that he not unlawfully use or possess a narcotic or other controlled substance. Jackson's term of supervised release began on May 13, 2009.

In September 2011, Jackson's probation officer filed a petition stating that Jackson had violated the condition of his supervised release that he not commit a federal, state, or local crime. The petition stated that Jackson had been charged by the Sharpsburg Pennsylvania Police Department with simple assault, endangering the welfare of a child, and harassment on August 23, 2011, and with disorderly conduct, false reports to law enforcement, simple assault, harassment, and stalking on September 2, 2011. Jackson's supervised release revocation hearing was originally scheduled for October 3, 2011, but did not occur until May 10, 2012. During the interim, Jackson's probation officer filed a supplemental petition informing the court that Jackson had tested positive for marijuana

2

and cocaine and thus had violated the condition of his supervised release that he not unlawfully possess or use a controlled substance.

At the revocation hearing, Jackson admitted to the positive drug test for marijuana and cocaine, but denied committing the other charges filed against him. Although his counsel argued that the positive drug test should result in only a Grade C violation of his supervised release,[1] the District Court determined that the offense would constitute a Grade B violation for committing a federal, state, or local offense punishable by more than one year of imprisonment. Specifically, the Court concluded that Jackson's positive drug test showed he was in violation of 21 U.S.C. § 844,[2] because it demonstrated that

---

[1] The guidelines establish three grades of supervised release violations – A, B, and C – in decreasing order of severity. U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 7B1.1. A Grade A violation consists of "conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device of a type described in 26 U.S.C. § 5845(a); or (B) any other federal, state, or local offense punishable by a term of imprisonment exceeding twenty years … ." U.S.S.G. § 7B1.1(a)(1). "Controlled substance offense" is a term of art under the guidelines and means offenses prohibiting "the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b); *see id.* § 7B1.1 cmt. n.3. A Grade B violation is for "conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year." *Id.* § 7B1.1(a)(2). And a Grade C violation is for conduct that constitutes either "a federal, state, or local offense punishable by a term of imprisonment of one year or less," or "a violation of any other condition of supervision." *Id.* § 7B1.1(a)(3).

[2] In relevant part, § 844 provides as follows:

> It shall be unlawful for any person knowingly or intentionally to possess a controlled substance unless such substance was obtained directly, or pursuant to a valid prescription or order, from a practitioner, while acting in the course of his

3

Jackson had been in possession of marijuana and cocaine. The Court further concluded that, because of Jackson's underlying drug conviction, his possession was punishable under § 844(a) by a term of imprisonment exceeding one year. Therefore, his conduct constituted a Grade B violation. U.S.S.G. § 7B1.1(a)(2). The government did not pursue the remaining violations alleged against Jackson because, based on the Court's finding of a Grade B violation, there would have been no additional sentencing benefit from the government's perspective, as the most serious offense, the false reports charge, was also a Grade B violation.[3]

---

> professional practice, or except as otherwise authorized by this subchapter or subchapter II of this chapter. … Any person who violates this subsection may be sentenced to a term of imprisonment of not more than 1 year, and shall be fined a minimum of $1,000, or both, except that if he commits such offense after a prior conviction under this subchapter or subchapter II of this chapter, or a prior conviction for any drug, narcotic, or chemical offense chargeable under the law of any State, has become final, he shall be sentenced to a term of imprisonment for not less than 15 days but not more than 2 years … .

21 U.S.C. § 844(a).

[3] At the hearing, the government sought to present testimony regarding the simple assault, endangering the welfare of a child, harassment, and disorderly conduct charges. Jackson objected to that testimony because the government admitted that its witnesses' personal knowledge of the underlying crimes was based on an interview of the alleged victim. The Court upheld that objection. The government was also prepared to present testimony regarding Jackson's alleged false reports charge from the police officer to whom Jackson allegedly lied. After the Court concluded that Jackson's possession of marijuana and cocaine was a Grade B violation, the government withdrew the false reports charge.

The District Court revoked Jackson's supervised release and sentenced him, within his guidelines range, to eighteen months' imprisonment[4] followed by eighteen months' supervised release.

This timely appeal followed.

## II.    Discussion[5]

Title 18 United States Code Section 3583 grants authority to courts to include terms of supervised release when sentencing criminal defendants.  18 U.S.C. § 3583(a). Section 3583(e) provides that a court may revoke, extend, terminate, or modify such a term of supervised release.  *Id.* § 3583(e)(1)-(4).  More specifically, and relevant here, § 3583(e)(3) permits a court to revoke a term of supervised release and require a defendant "to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release," if the court "finds by a preponderance of the evidence that the defendant violated a condition of supervised release."  *Id.* § 3583(e)(3).  Revocation is required when the court concludes that a defendant, while on supervised release, possessed a controlled substance.  *Id.* § 3583(g)(1).

---

[4] The Court determined Jackson's guidelines range, pursuant to guidelines § 7B1.4(a), to be twelve to eighteen months' imprisonment commensurate with a Grade B violation and a criminal history category of IV.

[5] The District Court had subject matter jurisdiction pursuant to 18 U.S.C. §§ 3231 and 3583.  We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.  We review for abuse of discretion a district court's decision to revoke supervised release. *United States v. Maloney*, 513 F.3d 350, 354 (3d Cir. 2008).  In doing so, factual findings in support of the decision are reviewed for clear error.  *Id.*  Questions of law, however, are reviewed de novo.  *Id.*

When a defendant violates his supervised release, the Court determines whether the defendant's conduct constituted a Grade A, Grade B, or Grade C violation, *see supra* note 1, and sentences the defendant, if it concludes that the defendant is to be incarcerated for his violation, to a term of imprisonment taking into account the guidelines and factors set forth in 18 U.S.C. § 3553. 18 U.S.C. §3583(e). It was under that authority that the District Court in this case concluded that Jackson possessed marijuana and cocaine, in violation of his supervised release, revoked his supervised release, and sentenced him.

Jackson presents three arguments on appeal: (1) that, in violation of his right to due process, he was not provided with sufficient notice that his conduct would constitute a Grade B violation of his supervised release; (2) that the government failed to file an information, in accordance with 21 U.S.C. § 851, notifying him that his prior drug conviction would be used to enhance his sentence; and (3) that a single positive drug test cannot constitute a Grade B violation. None of his arguments is persuasive.

A.      *Notice Required for a Supervised Release Violation*

Jackson first argues that his due process rights were infringed because he was not provided with sufficient notice that his conduct could be considered a Grade B violation.[6]

_____

[6] Jackson did not specifically object on due process grounds at the revocation hearing, but did disagree with the District Court's determination that his positive drug test was a Grade B violation based on the probation officer's supplemental petition that identified the positive drug test as a violation of the condition not to unlawfully use or possess a controlled substance. The government contends that Jackson's failure to raise his due process argument results in a waiver of that argument. Although an error not properly preserved in the District Court is reviewed for plain error, *United States v. Albertson*, 645 F.3d 191, 196 (3d Cir. 2011), we need not decide whether Jackson

6

The violation at issue is Jackson's positive drug test for marijuana and cocaine on December 7, 2011. At the time of his original sentence in June 2007, Jackson received written notice of the conditions of his supervised release, and he received notice again in September 2011 when he was given the probation officer's original petition regarding his violations of supervised release, which contained a copy of the full list of his conditions of supervised release. Those conditions were further reiterated in the probation officer's supplemental petition of December 15, 2011, that expressly identified Jackson's positive drug test as a violation of the condition that he not possess a controlled substance and not use a controlled substance.

With that notice in mind, Jackson does not claim that he was unaware that a positive drug test would constitute a violation of supervised release. Rather, he claims that, because the supplemental petition identified that violation as relating to the condition of supervised release prohibiting the unlawful possession or use of a controlled substance, he operated under the belief that that violation fit the category of "a violation of any other condition of supervision," U.S.S.G. § 7B1.1(a)(3)(B), which would constitute only a Grade C violation. He argues that he was unfairly surprised, therefore, when the District Court concluded that his conduct constituted a crime punishable by more than one year of imprisonment, which would be a Grade B violation, U.S.S.G. § 7B1.1(a)(2). Thus, in Jackson's view, the petition failed to put him on notice that he faced a potential Grade B violation, depriving him of due process.

properly preserved his due process argument because, as discussed herein, even assuming that he did preserve the issue, there was no due process violation.

His argument fails because he seeks more process than he was due. What is necessary to satisfy the demands of due process depends upon the nature and stage of the criminal proceedings. In *Morrissey v. Brewer*, the Supreme Court held that a defendant in a state parole revocation proceeding does not enjoy "the full panoply of rights" due to a criminal defendant. 408 U.S. 471, 480 (1972). That diminished protection is justified by the government's "overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial if in fact he has failed to abide by the conditions of his parole." *Id.* at 483. The rights announced in *Morrissey*, and in *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973), which adopted the rights from *Morrissey* and applied them to federal probation, are codified in Federal Rule of Criminal Procedure 32.1.[7] Pertinent here, one of those requirements for minimal due process is

---

[7] Rule 32.1 provides the procedural rules for revoking or modifying probation or supervised release at the various stages of the process: the initial appearance, the preliminary revocation hearing, the revocation hearing, and modification. Relevant here, the procedure required at the revocation stage is as follows:

> Unless waived by the person, the court must hold the revocation hearing within a reasonable time in the district having jurisdiction. The person is entitled to:
>
> (A) written notice of the alleged violation;
> (B) disclosure of the evidence against the person;
> (C) an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear;
> (D) notice of the person's right to retain counsel or to request that counsel be appointed if the person cannot obtain counsel; and
> (E) an opportunity to make a statement and present any information in mitigation.

that the defendant be given "written notice of the claimed violations" of his supervised release. *See Morrissey*, 408 U.S. at 489; *see also* Fed. R. Crim. P. 32.1(b)(2)(A).

Jackson's written notice complied with that due process requirement. He cannot contend that he was unaware of the charge of possession of marijuana and cocaine. And he cannot contend that he was unaware of the facts the government would use to prove that charge – that is, his positive drug test for both substances. Both the charge and the facts the government would use to prove it were plainly stated in the supplemental petition for revoking his supervised release. That notice was sufficient for Jackson to prepare his defense and, thus, complied with the due process rights afforded him under *Morrissey* and *Scarpelli*. *See United States v. Sistrunk*, 612 F.3d 988, 992 (8th Cir. 2010) ("For notice to be effective, it need only assure that the defendant understands the nature of the alleged violation.").

He contends, however, that "[t]he notice given to him through the violation petitions was such that his alleged criminal conduct per the charges brought by the Sharpsburg Police Department constituted Grade B violations … and the positive drug test constituted a Grade C violation." (Appellant's Br. at 14-15.) Thus, he appears to argue that the petitions themselves provided a clear indication of which grade each violation constituted, but that argument is inaccurate and unavailing.

Neither petition submitted by the Probation Office indicated the grade of the offense. Jackson perhaps reviewed the charges, and the underlying crimes, and believed

Fed. R. Crim. P. 32.1(b)(2)(A)-(E).

9

that his use of drugs amounted only to a Grade C violation. But he cannot rightly claim that the petitions themselves were misleading about the grades of his violations. Moreover, Jackson cites no authority for his proposition that, to satisfy due process, he must be made aware of the grade of violation with which he is being charged. That is not surprising, since the guidelines provide that the grade of a violation is related to the "conduct" of the releasee, not necessarily the specific condition of supervised release the defendant violated. *See* U.S.S.G. § 7B1.1(a)(2) (providing that a Grade B violation is for "conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year"); *id.* § 7B1.1 cmt. n.1 ("[T]he grade of the violation is to be based on the defendant's actual conduct."). And there is no dispute that Jackson was aware of the conduct – testing positive for marijuana and cocaine – that resulted in his violation of supervised release.

At bottom, Jackson quibbles with the District Court's conclusion that his conduct resulted in a Grade B violation, and with the fact that he did not foresee that possibility based upon the charge that he possessed marijuana and cocaine. Yet his lack of foresight is not a result of insufficient notice; Jackson received all the notice, and all the process, he was due.

B. *The District Court's Reliance on Jackson's Prior Conviction in Finding a Grade B Violation.*

Jackson next argues that, in determining his sentence, the District Court erred when it considered his prior drug conviction. He believes the Court could not take that conviction into account because the government did not file an information identifying

10

prior convictions to be relied upon for enhanced sentencing pursuant to 21 U.S.C. § 851.

Section 851, provides, in relevant part, as follows:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.

21 U.S.C. § 851(a)(1). Jackson notes that the government did not submit a § 851 information in this case, and, he says, because possession of cocaine is not punishable by more than one year of imprisonment absent a prior drug conviction, *see* 21 U.S.C. § 844(a), the District Court could not lawfully rely upon his prior conviction without a § 851 information being on file. Again, his argument is unavailing.

By its plain language, § 851 does not apply to supervised release proceedings. That section applies when the government is pursuing a conviction and enhanced sentencing, but Jackson faced a revocation hearing, not a trial. Rather than seeking a new conviction, the government sought only to demonstrate by a preponderance of evidence that Jackson's conduct violated terms of his supervised release. The guidelines' policy statements emphasize that a conviction is not required and that "[t]he grade of the violation does not depend upon the conduct that is the subject of criminal charges or of which the defendant is convicted in a criminal proceeding. Rather, the grade of the violation is to be based on the defendant's actual conduct." U.S.S.G. § 7B1.1 cmt. n.1. Thus, it does not matter for purposes of supervised release whether or not the government would have sought enhanced penalties if it had brought new criminal charges against

11

Jackson for his possession of marijuana and cocaine; it only matters what Jackson's possible punishment was for his actual conduct.

It is clear that, because of his earlier drug conviction, Jackson's conduct was punishable by more than one year of imprisonment. Moreover, although not squarely addressing the § 851 issue that Jackson presents to us, our sister courts have held that a prior drug conviction may be used to raise a simple "possession of a controlled substance" violation from a Grade C to a Grade B violation as conduct violating federal law punishable by more than one year of imprisonment. *See United States v. Trotter*, 270 F.3d 1150, 1154 (7th Cir. 2001) (concluding that when deciding whether a defendant's conduct is punishable by more than one year of imprisonment "courts must determine whether the conduct is a felony (etc.) after prior convictions are taken into account"); *United States v. Crace*, 207 F.3d 833, 838 (6th Cir. 2000) (permitting court to take into account prior convictions when determining if a defendant's conduct constituted a Grade B violation); *cf. United States v. Bungar*, 478 F.3d 540, 544 (3d Cir. 2007) (explaining there was no dispute defendant's possession of cocaine could be considered a Grade B violation).

C.      *Whether a Single Positive Drug Test Is a Grade B Violation*

Jackson's final argument is that the District Court erred in concluding that a single positive drug test was a Grade B violation and not a Grade C violation. In support, he cites to *United States v. Blackston*, 940 F.2d 877 (3d Cir. 1991).

In that case, we held that it was not clear error for a district court to conclude, in the presence of a positive drug test, that a defendant possessed the drug prior to using it.

12

*Id.* at 879. We recognized, in other words, that a positive drug test can be circumstantial evidence of possession. *Id.* at 891. And, we said, if a court finds such circumstantial evidence sufficient to conclude that there was possession, then 18 U.S.C. § 3583(g)[8] requires revocation of supervised released. *Id.* at 892-93. We were clear, however, that a positive drug test did not require revocation of supervised release under § 3583(g) if the court did not find the circumstantial evidence of drug use sufficient to demonstrate possession. *Id.* at 891.

Jackson believes that *Blackston* stands for the proposition that "possession of a controlled substance does not equate with a Grade B violation and instead [is] a Grade C violation[,] as *Blackston* held that the revocation of supervised release is not required as the result of a positive drug test." (Appellant's Br. at 20.) That flexibility to not revoke supervised release for a positive drug test is significant, Jackson seems to argue, because the guidelines provide that a Grade B violation results in mandatory revocation of supervised release, but a Grade C violation does not. U.S.S.G. § 7B1.3(a).

Jackson misapprehends *Blackston*'s holding. His confusion apparently stems from the statement in *Blackston* that "revocation of supervised release" is not required "every time a defendant tests positive for drug use." 940 F.2d at 879. But, in the context of

---

[8] At the time of *Blackston*, § 3583(g) provided that "if the defendant is found to be in possession of a controlled substance, the district court is required to terminate supervised release and sentence the defendant to a period of incarceration of at least one-third of the term of supervised release." *Blackston*, 940 F.2d at 879 n.2 (internal quotation marks omitted). The current version of § 3583 also requires mandatory revocation of supervised release for possession of a controlled substance, but does not set the minimum period of incarceration. 18 U.S.C. § 3583(g)(1).

13

*Blackston*, that language simply confirms that a positive drug test is only circumstantial evidence of possession and does not *ipso facto* require the court to conclude that a defendant did possess a controlled substance. A district court could conclude that a positive drug test was insufficient to show possession.[9]

In this case, Jackson's counsel conceded that a positive drug test indicated at least simple possession. (*See* App. at 23 ("I don't know that his testing positive for marijuana or cocaine would constitute an offense punishable by a term of imprisonment exceeding one year. I believe it would be simple possession … ."). And Jackson does not contest on appeal the District Court's conclusion that he possessed marijuana and cocaine. He argues instead that his simple possession should not be a Grade B violation. His argument, however, misses the point.

Whether or not a person with no prior drug convictions, and hence not subject, as Jackson is, to a term of imprisonment of more than one year for again possessing drugs,

---

[9] Indeed, *Blackston* does not stand for the proposition that a single positive drug test is a Grade C violation as Jackson proposes. *Blackston* instead states:

> A single positive urinalysis … is a poor indicator of whether supervised release is working for the defendant. For many of the defendants who, at one time or another, test positive for drug use, treatment and rehabilitation continue to make more sense than do revocation and imprisonment. Our decision today, we believe, affords … district courts sufficient flexibility to take these factors into account and to consider what is best for the defendant and society.

940 F.2d at 892 n.24. That language in no way precludes a district court from finding a Grade B violation in the presence of a single positive drug test, if the district court concludes that, based upon that positive test, a defendant with a prior drug conviction again possessed a controlled substance.

18 U.S.C. § 844(a), might qualify for a Grade C violation rather than a Grade B violation is a question we need not address. Here, the District Court classified Jackson's conduct as a Grade B violation because it was simple possession by a defendant that had a prior drug conviction. It was that prior conviction that made Jackson's conduct punishable by more than one year of imprisonment under 18 U.S.C. § 844(a) and, as a result, a Grade B violation.[10] The District Court did not err in that conclusion.

## III.  Conclusion

For the above reasons, we will affirm the sentence of the District Court.

---

[10] As Jackson acknowledges in his brief, we have precedent that equates drug use to possession and a Grade B violation for a repeat offender, and have thus mandated revocation and incarceration under 18 U.S.C. § 3583(g). *Bungar*, 478 F.3d at 544. Other circuits have also held that positive drug tests may equate to simple possession and a Grade B violation for repeat drug offenders. *See Crace*, 207 F.3d at 835 (concluding that a single positive drug test was evidence of possession and that the District Court did not err in holding defendant to Grade B violation of supervised release); *see also Trotter*, 270 F.3d at 1153-54 (collecting cases and citing *Blackston*).